UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CONTEMPORARY VILLAGES, INC.,

      Plaintiff,                    Case No. 2:05-cv-170
                                     JUDGE GREGORY L. FROST
  v.                                 Magistrate Judge Norah McCann King

THOMAS HEDGE,

      Defendant.

**OPINION AND ORDER**

This diversity action is before the Court for consideration of Defendant's motion to dismiss (Doc. # 6), Plaintiff's memorandum in opposition (Doc. # 10), and Defendant's reply (Doc. # 11). For the reasons that follow, the Court finds the motion not well taken.

**I. Background**

According to the Complaint, Plaintiff, Contemporary Villages, Incorporated, is a Kentucky corporation that contracted in July 2003 with Maysville Survey & Engineering Company ("Maysville") to secure land for a client that intended to build a subdivision. Maysville personnel contacted Paul Young, a Remax Realtor, concerning one of two tracts of land located in Williamsburg Township, Ohio owned by Tollgate Enterprise GP ("Tollgate"), an Ohio General Partnership. Negotiations resulted in Plaintiff submitting a $1,375,000.00 offer with contingencies. Tollgate rejected that offer and responded with a $1,450,000.00 counteroffer with fewer contingencies. Plaintiff purportedly accepted the counteroffer and submitted a written contract that two of the three Tollgate partners signed prior to the expiration of their

1

listing with Remax. The Complaint further alleges, without elaboration, that Defendant, Ohio citizen Thomas Hedge, then "willfully and wantonly interfered" with the contractual and business relationship between Plaintiff and Tollgate. (Doc. # 1, at 3 ¶¶ 13, 17.) This allegedly resulted in Tollgate declining to do business with Plaintiff.

On February 23, 2005, Plaintiff filed its two-count Complaint. (Doc. # 1.) Count One asserts a claim under Ohio law for tortious interference with a contract, while Count Two consists of a state law claim for tortious interference with a business relationship. Plaintiff seeks compensatory damages of $1,300,000.00, as well as punitive damages of $3,900,000.00, attorney fees, and interest.

On March 8, 2005, Defendant moved to dismiss the Complaint for failure to state a claim upon which this Court can grant relief. (Doc. # 6.) The parties have completed their briefing, and the motion to dismiss is now ripe for disposition.

## II. Discussion

### A. Standard Involved

Defendant moves to dismiss both counts of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Dismissal is warranted under that rule " 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)), *cert. denied*, 520 U.S. 1251 (1997). The focus is not on whether Plaintiff will ultimately prevail, but rather on whether it has offered " 'either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal

theory.' " *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988)). In making such a determination, the Court must " 'construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein.' " *Sistrunk*, 99 F.3d at 197 (quoting *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994)). The Court need not, however, accept conclusions of law or unwarranted inferences of fact. *Perry v. American Tobacco Co., Inc.*, 324 F.3d 845, 848 (6th Cir. 2003). The Court may also consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

### B. Tortious Interference with Contractual Relations Claim

As noted, Plaintiff asserts in Count One of its Complaint a state law claim for tortious interference with a contractual relationship. (Doc. # 1, at 2-3.) The cause of action for tortious interference with contract is set forth in the *Restatement (Second) of Torts § 766* (1979) (the "Restatement"). Section 766, titled *Intentional Interference With Performance Of Contract By Third Person*, proscribes liability to

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*Restatement (Second) Torts § 766*. Ohio law recognizes this cause of action, and the Ohio Supreme Court has in fact explicitly adopted the Restatement's construction of such a claim. *See Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 418, 650 N.E.2d 863, 866 (1995).

3

*See also Fred Siegel Co. v. Arter & Hadden*, 85 Ohio St. 3d 171, 175, 707 N.E.2d 853, 858 (1999).

Thus, under Ohio's construction of the cause of action, a plaintiff asserting tortious interference with a contractual relationship must prove "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A.*, 85 Ohio St. 3d at 176, 707 N.E.2d at 858 (citing *Kenty*, 72 Ohio St. 3d 415, 650 N.E.2d 863, paragraph two of the syllabus). *See also Dorricott v. Fairhill Center for Aging*, 187 F.3d 635, 1999 WL 591453, at *3 (6th Cir. 1999) (unpublished table decision). The Ohio Supreme Court has further explained that

> even if an actor's interference with another's contract causes damages to be suffered, that interference does not constitute a tort if the interference is justified. "The issue in each case is whether the interference is improper or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another. "

*Fred Siegel Co., L.P.A.*, 85 Ohio St. 3d at 176, 707 N.E.2d at 858 (quoting 4 Restatement of the Law 2d, Torts, at 28, Section 767, Comment *b*). The Ohio cause of action requires that the "wrongdoer is not a party to the contract but a third person." *Dorricott*, 187 F.3d 635, 1999 WL 591453, at *3 (citing *Kenty*, 72 Ohio St. 3d at 418-19, 650 N.E.2d at 866).

While agreeing with the foregoing elements of the tort, Defendant asserts that dismissal is warranted here because no contract existed with which he could have interfered. He reasons that according to the plain language of the Complaint, Plaintiff submitted a written offer to Tollgate and that Tollgate rejected that offer and made a counter-offer. Because Plaintiff

4

accepted the counter-offer and then submitted a written contract to Tollgate, Defendant concludes that the Tollgate counter-offer was *not* in writing and therefore *cannot constitute a contract*. To support his reasoning, Defendant point to the Ohio Rev. Code § 1335.05 requirement that a contract for the sale of real property must be in writing and concludes that "[c]learly, the third [Tollgate] partner's acceptance of the offer was required in order to create a contract or Plaintiff would have alleged that it had a written contract and further arguably could have brought an action for specific performance." (Doc. # 6, at 3.)

Plaintiff of course disagrees with Defendant's analysis, arguing that a contract exists for at least three basic reasons. First, Plaintiff asserts, the Complaint alleged that a contract existed between Tollgate and Plaintiff, and for present purposes the Court must accept that factual assertion. Second, Plaintiff contends that a contract could have arisen with acceptance of a written Tollgate counter-offer, despite the subsequent submission of a contract by Plaintiff. Third, Plaintiff argues that a valid contract could have been formed when two of the three Tollgate partners signed the contract Plaintiff submitted based on Tollgate's counter-offer.

Having considered the parties' arguments–and the fact that Defendant has confined his motion to dismiss *only* to the specific, narrow question of whether a contract exists (Doc. # 11, at 1)–the Court cannot say that it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of Plaintiff's Complaint. The fact that Tollgate's counter-offer may not have been in written form (and it appears by inference that it was not) is ultimately immaterial here given that two of the three Tollgate partners signed the contract they then received from Plaintiff. To invalidate these two signatures as creating a binding contract, Defendant relies on Ohio Rev. Code § 1775.08(B), which provides that "[a]n act of a partner

5

which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners." This reliance cannot prove dispositive of the motion to dismiss, however, because based only on the Complaint, the Court cannot say that the partnership agreement does *not* permit a simple majority of partners to execute agreements that are binding on the partnership as a whole; as Plaintiff points out, "there is no evidence that the third partner's acceptance was required in order to form a binding contract." (Doc. # 10, at 5.) In other words, there is simply no context in the pleading as to what constitutes the "usual way" in which the partnership is conducted. In the absence of such facts, the Court must infer that a valid contract was formed.

The Court further agrees with Plaintiff that Defendant's argument that the absence of a specific performance claim against Tollgate suggests the lack of a valid contract. Plaintiff is not required to assert such a claim in order to pursue a different cause of action against a different defendant, and Defendant's reliance on this reasoning is a red herring.

Finally, the parties should note that today's holding in no way opines on whether Plaintiff could survive summary judgment, where it will not be able to rely on the less-stringent standard involved in the instant motion to dismiss. Defendant may very well be able to demonstrate that the facts are contrary to today's necessary inference.

**C. Tortious Interference with Business Relations Claim**

Plaintiff asserts in Count II of the Complaint a state law claim for tortious interference with a business relationship. Such a claim arises under Ohio law when "a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *A & B-*

6

*Abell Elevator Co., Inc v. Columbus/Central Ohio Bldg. & Const. Trades Council*, 73 Ohio St. 3d 1, 14, 651 N.E.2d 1283, 1294 (1996). To establish tortious interference with a business relationship, Plaintiff must therefore show:

> (1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom.

*Sancap Abrasives Corp. v. Swiss Indus. Abrasives*, 19 Fed. Appx. 181, 193 (6th Cir. 2001) (quoting *Chandler and Assocs., Inc. v. America's Healthcare Alliance, Inc.,* 125 Ohio App.3d 572, 709 N.E.2d 190, 197 (1997)). In considering whether unjustified or improper interference exists, a court must consider the following factors:

> (1) the nature of the actor's conduct; (2) the actor's motive; (3) the interests of the other with which the actor's conduct interferes; (4) the interests sought to be advanced by the actor; (5) the proximity or remoteness of the actor's conduct to the interference; (6) the social interests in protecting the freedom of contract and the interference with such; and (7) the relations between the parties.

*Sancap Abrasives Corp.*, 19 Fed. Appx. at 193 (citing *Hoyt, Inc. v. Gordon & Assocs., Inc.,* 104 Ohio App.3d 598, 662 N.E.2d 1088, 1092 (1995)).

Defendant's rationale for dismissal of this second count is because "the written agreement was not valid without all three general Partners of Tollgate ... Plaintiff did not have a business relationship with Tollgate." (Doc. # 11, at 3.) This reasoning fails, however, based upon the analysis presented in the preceding section. There ultimately may or may not be a requirement of unanimity in action among the Tollgate partners, but based upon the facts pled, this Court cannot infer that two partners cannot bind the partnership as a whole. Further, Defendant overlooks the aspect of Plaintiff's claim targeting a prospective relationship. Thus,

7

the Court cannot say that no business relationship existed between Plaintiff and Tollgate with which Defendant could have improperly interfered.

Nor can the Court accept Defendant's argument that he acted with privilege to do so. Defendant states in his motion to dismiss that "[t]he facts set forth in the Complaint are merely that Plaintiff offered to purchase real property from Tollgate and that Tollgate did not accept the offer because Defendant Hedge allegedly caused his mother, a partner in Tollgate, not to accept the offer." (Doc. # 6, at 5.)  He then argues that such action was privileged because "[a]s the son of the remaining partner of Tollgate ... [he] would have an inchoate expectancy of a portion of the assets owned by his mother."  (Doc. # 6, at 5.)

Without expressing any opinion on the merits of the privilege rationale, the Court concludes that it cannot accept that argument here simply because it relies on facts not pled in the Complaint.  That pleading never describes Defendant's relationship to Tollgate and never describes precisely what he is accused of doing, other than the general allegation of improper interference. (Doc. # 1, at 3 ¶ 17.)  Within the context of the motion to dismiss, the Court must confine itself solely to the facts as alleged in the Complaint.  Accordingly, necessarily construing the Complaint liberally in Plaintiff's favor and accepting as true all factual allegations and permissible inferences therein, the Court must conclude that Plaintiff has presented factual allegations that suggest a business relationship and that do not present the issue of privilege for disposition here.  Further, because Defendant has elected to confine his motion to dismiss to whether a contract existed and to whether a consequent business relationship existed with Tollgate predicated upon that contract, the Court again does not inquire into whether the pleading sufficiently addresses Defendant's actions so as to plead all elements of the tort.

8

### III.  Conclusion

For the foregoing reasons, the Court **DENIES** the motion to dismiss.  (Doc. # 6.)

**IT IS SO ORDERED.**

                                            /s/   Gregory L. Frost
                                          GREGORY L. FROST
                                          UNITED STATES DISTRICT JUDGE