UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CONTEMPORARY VILLAGES, INC.,

      Plaintiff,                             Case No. 2:05-cv-170
                                                JUDGE GREGORY L. FROST
     v.                                    Magistrate Judge Norah McCann King

THOMAS HEDGE,

      Defendant.

## OPINION AND ORDER

This diversity action is before the Court for consideration of Defendant's motion for summary judgment (Doc. # 34), Plaintiff's memorandum in opposition (Doc. # 42), and Defendant's reply (Doc. # 43). For the reasons that follow, the Court finds the motion well taken.

## I. Background

Tollgate Enterprise GP ("Tollgate") is an Ohio General Partnership formed in June 1995. The partnership consists of Rita Remley, who holds a 50% interest in the partnership, and her two stepdaughters, Nancy Windle and Linda Walters, each of whom hold 25% interests in the partnership. The purpose of the partnership is joint ownership of a farm located in Williamsburg, Ohio.

Plaintiff, Contemporary Villages, Incorporated ("Contemporary"), is a Kentucky corporation that contracted in July 2003 with Maysville Survey & Engineering Company ("Maysville") to secure land for a client that intended to build a subdivision. Contemporary's

1

agent, Winston Morris, therefore contacted Paul Young, a Remax Realtor, concerning Tollgate's property; Young had been the real estate agent for this property since February 4, 2004.

Negotiations resulted in Contemporary submitting a January 2, 2004 offer of $1,375,000.00 for Tollgate's property. Tollgate rejected that offer and responded with a $1,450,000.00 counteroffer with fewer contingencies than those contained in the initial offer. Contemporary purportedly accepted the counteroffer and then, for reasons not clear on the face of the record, submitted a written contract with a $1,500,000.00 purchase price. Tollgate partners Windle and Winters signed this contract, but Tollgate's third partner, Remley, did not sign because she wanted her son--Defendant, Thomas Hedge–to review the offer.

Hedge allegedly found several problems with the offer. He determined that at the time Contemporary made its February 7, 2004 offer, the company had failed to file its incorporation papers. He also looked into Contemporary's finances, raising questions about its backing, and reviewed comparable values for the Tollgate property. He concluded that the property was worth considerably more than the offered purchase price, but did not convey this information to Windle and Walters. Remley ultimately declined to accept the offer on the asserted basis that she was concerned about a zoning contingency.

Hedge asserts that, purportedly acting at Remley's request, he then offered in May 2004 to purchase the shares of the property held by Windle and Walters for around $720,000.00. The sisters rejected the offer. Hedge points out that around this period of time Morris had loaned both sisters money that they used to satisfy various creditors. In any event, Remley declined to

accept Contemporary's offers and the property went unsold.[1]

On February 23, 2005, Contemporary filed its two-count Complaint against Hedge. (Doc. # 1.) Count One asserts a claim under Ohio law for tortious interference with a contract, while Count Two consists of a state law claim for tortious interference with a business relationship.

On March 8, 2005, Defendant moved to dismiss the Complaint for failure to state a claim upon which this Court can grant relief. (Doc. # 6.) The Court denied that motion in a May 24, 2005 Opinion and Order. (Doc. # 17.) Following discovery, Defendant then filed a motion for summary judgment. (Doc. # 34.) The parties have completed their briefing, and the summary judgment motion is now ripe for disposition.

## II. Discussion

### A. Standard Involved

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must therefore grant a motion for summary judgment here if Contemporary, the nonmoving party who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to his case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003)

---

[1] There was also an unsuccessful offer by a Mr. Stafford to purchase the property, but the record presents few of the details of this offer. (Doc. # 35, Hedge Dep., at 57-58.)

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of Contemporary, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52.)

**B. Tortious Interference with Contractual Relations Claim**

As noted, Contemporary asserts in Count One of its Complaint a state law claim for tortious interference with a contractual relationship. (Doc. # 1, at 2-3.) As this Court explained in its previous order on the motion to dismiss, the cause of action for tortious interference with contract is set forth in the *Restatement (Second) of Torts § 766* (1979) (the "Restatement"). Section 766, titled *Intentional Interference With Performance Of Contract By Third Person*, proscribes liability to

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*Restatement (Second) Torts § 766*. Ohio law recognizes this cause of action, and the Ohio Supreme Court has in fact explicitly adopted the Restatement's construction of such a claim. *See Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 418, 650 N.E.2d 863, 866 (1995). *See also Fred Siegel Co. v. Arter & Hadden*, 85 Ohio St. 3d 171, 175, 707 N.E.2d 853, 858 (1999).

Thus, under Ohio's construction of the cause of action, a plaintiff asserting tortious interference with a contractual relationship must prove "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A.*, 85 Ohio St. 3d at 176, 707 N.E.2d at 858 (citing *Kenty*, 72 Ohio St. 3d 415, 650 N.E.2d 863, paragraph two of the syllabus). *See also Dorricott v. Fairhill Center for Aging*, 187 F.3d 635, 1999 WL 591453, at *3 (6th Cir. 1999) (unpublished table decision). The Ohio Supreme Court has further explained that

> even if an actor's interference with another's contract causes damages to be suffered, that interference does not constitute a tort if the interference is justified. "The issue in each case is whether the interference is improper or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another."

*Fred Siegel Co., L.P.A.*, 85 Ohio St. 3d at 176, 707 N.E.2d at 858 (quoting 4 Restatement of the Law 2d, Torts, at 28, Section 767, Comment *b*). The Ohio cause of action requires that the "wrongdoer is not a party to the contract but a third person." *Dorricott*, 187 F.3d 635, 1999 WL 591453, at *3 (citing *Kenty*, 72 Ohio St. 3d at 418-19, 650 N.E.2d at 866).

Hedge asserts that he is entitled to summary judgment because Contemporary cannot

5

satisfy the first four elements of the cause of action.[2]  The Court shall therefore address each of his arguments in turn.

      First, Hedge contends that no contract existed with which he could have interfered.  He reasons that because Remley had declined to sign the contract Contemporary had submitted, no writing existed for the sale of the property.  To support his reasoning, Hedge again directs this Court to the Ohio Rev. Code § 1335.05 requirement that a contract for the sale of real property must be in writing and properly signed; he also points to the partnership agreement.

      Contemporary of course disagrees that no contract existed.  The company argues that a contract was formed when Young and Tollgate partner Walters offered Morris the written counteroffer of a $1,450,000.00 purchase price and Contemporary agreed.  The company contends that Morris' belief that Young was acting as Tollgate's agent is important, and concludes that "[a]t a minimum, there is an issue of fact as to whether Young and/or Walters were able to bind Tollgate and whether a binding contract was formed."  (Doc. # 42, at 7.)  Alternatively, Contemporary also argues that a contract was formed when Windle and Walters accepted the company's offer.  To support this latter contention, the company argues that it did not know that Windle and Walters "only owned half of Tollgate or that they could not bind Tollgate" and that "[t]herefore, there was a binding contract."  (Doc. # 42, at 7.)

      No contract existed.  As Hedge correctly points out, the Tollgate partnership agreement provides that "[t]he General Partners shall have sole and exclusive control of the Partnership affairs.  All matters concerning the management, operation, development, conduct of business,

---

[2] Hedge's motion therefore does not reach the fifth element of resulting damages.

and sale of the Partnership Real Estate shall be determined by an unanimous vote of the General Partners." (Doc. # 43, Ex, A., Partnership Agreement § 8.01, at 7-8.) The agreement thus precludes the formation of a binding contract by only two of the three partners, which invalidates both of Contemporary's arguments. Windle and Walters could neither offer the property for sale without Remley's consent nor agree to accept a purchase offer.

The Court recognizes that whether Morris knew of the partnership limitations is potentially material under Ohio Rev. Code § 1775.08(A). But Morris' conduct repeatedly indicates that he (and hence Contemporary) believed that no contract existed (Doc. # 37, Morris Dep., at 30-34, 43-46); otherwise, there is no basis for continuing to increase the purchase price offer. There is no material issue of fact here, then, because no reasonable juror could conclude that Contemporary would have kept making increasing offers when a prior offer had resulted in a successful contract. In other words, if Contemporary believed (as it insists it did) that it had a binding contract at a lesser price, then it is nonsensical that it subsequently made an offer for a greater sum. Contemporary's position is that it had a binding contract at $1,450,000.00 with Tollgate via Windle and Walters. It would not have needed to and would not have made the offer of $1,500,000.00, but the company did just that. No reasonable jury composed of rational factfinders could reach the conclusion that a contract existed under these circumstances. No reasonable inference supports that Contemporary believed that the sisters could together bind Tollgate to a contract and that the company then continued to make a higher offer after a binding contract had been realized.

Here, unlike in the earlier decision on the motion to dismiss, the Court can conclude that the partnership agreement does *not* permit a simple majority of partners to execute agreements

that are binding on the partnership as a whole. Contemporary has failed to direct this Court to any evidence that the Tollgate partners' usual method of conducting business was contrary to the partnership agreement, so as to avoid running afoul of Ohio Rev. Code § 1775.08(B)'s rule that "[a]n act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners."

Because no contract existed, Contemporary cannot satisfy the first element of its claim of tortious interference with a contractual relationship. Hedge is therefore entitled to summary judgment on this count of the complaint, and the Court need not and does not reach the parties' alternative arguments regarding the remaining elements of the cause of action.

### C. Tortious Interference with Business Relations Claim

Contemporary also asserts in the Complaint a state law claim for tortious interference with a business relationship. This claim exists under Ohio law when "a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *A & B-Abell Elevator Co., Inc v. Columbus/Central Ohio Bldg. & Const. Trades Council*, 73 Ohio St. 3d 1, 14, 651 N.E.2d 1283, 1294 (1996). To establish tortious interference with a business relationship, Contemporary must therefore show:

> (1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom.

*Sancap Abrasives Corp. v. Swiss Indus. Abrasives*, 19 Fed. Appx. 181, 193 (6th Cir. 2001)

(quoting *Chandler and Assocs., Inc. v. America's Healthcare Alliance, Inc.,* 125 Ohio App.3d 572, 709 N.E.2d 190, 197 (1997)). The Sixth Circuit has held that the business relationship cause of action differs from Ohio's tortious interference with contractual rights "only in that the former tort does not require proof of a contractual relationship." *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999).

In considering whether unjustified or improper interference exists, a court must consider the following factors:

> (1) the nature of the actor's conduct; (2) the actor's motive; (3) the interests of the other with which the actor's conduct interferes; (4) the interests sought to be advanced by the actor; (5) the proximity or remoteness of the actor's conduct to the interference; (6) the social interests in protecting the freedom of contract and the interference with such; and (7) the relations between the parties.

*Sancap Abrasives Corp.*, 19 Fed. Appx. at 193 (citing *Hoyt, Inc. v. Gordon & Assocs., Inc.,* 104 Ohio App.3d 598, 662 N.E.2d 1088, 1092 (1995)).

Contemporary's theory of the case is that Hedge acted improperly in advising Remley, his mother, to decline Contemporary's offer. The company also argues that Hedge acted improvidently by subsequently attempting to secure Windle and Walters' portions of the partnership for himself.

Review of the record indicates that Hedge indeed advised his mother to decline selling the property to Contemporary. It also reveals that he sought to purchase the sisters' shares of the partnership in the apparent hope of then realizing a substantial profit notably above Contemporary's top offer. But even assuming *arguendo* that Contemporary otherwise satisfies most of the elements of its second claim, the Court must conclude that Hedge is entitled to

9

summary judgment.

Hedge was acting as a solicited advisor or agent to his mother. Ohio law provides:

> Tortious interference does not lie when the defendant is an agent (employee) of the principal (employer) and he or she acts within the scope of his or her duties. Thus, in order to maintain a tortious interference claim in a case such as this one, the evidence must demonstrate that, in interfering in the principal's business relationship, the agent acted *solely* in his or her personal capacity.

*Russell v. City of Northwood*, No. WD-97-050, 1998 WL 102137, at *3 (Ohio 6th App. Dist. Feb. 27, 1998) (citations omitted; emphasis added). Although there is a potential inference of mixed motives on Hedge's part, there is no evidence suggesting that his motives were solely in his own interests and not in the best interests of Remley. There is no evidence, for example, to suggest that the advice he gave (*i.e.*, telling his mother that Contemporary had made an offer before it filed its incorporation papers) was false, and Ohio law recognizes that tortious interference claims cannot lie for the dissemination of truthful information. *Cf. Dryden v. Cincinnati Bell Tel. Co.*, 135 Ohio App.3d 394, 401, 734 N.E.2d 409, 414 (Ohio 1st App. Dist. 1999) (holding in regard to tortious interference with employment relationship claim that "one who intentionally causes a third person not to perform a contract does not do so improperly by giving the third person truthful information"). Remley's affidavit supports that she credited at least several of Hedge's concerns and that she wanted more than the $1,500,000.00 purchase price constituting Contemporary's most recent offer. (Doc. # 34, Remley Aff. Ex., at 2-3 ¶¶ 12-15.)

Hedge also acted at his mother's request as a competitor of Contemporary in pursuing the partnership interests of Windle and Walters. (Doc. # 34, Remley Aff. Ex., at ¶ 15.)

Additionally, Contemporary has produced no evidence that, absent Hedge's conduct, Remley would have consummated the prospective relationship with Contemporary.  *Re/Max Int'l, Inc. v. Smythe, Cramer Co.*, 265 F. Supp. 2d 882, 893 (N.D. Ohio 2003) (requiring "a showing that but for the alleged interference, the plaintiff would have consummated the prospective relationship"); *Chrvala v. Borden, Inc.*, 14 F. Supp. 2d 1013, 1023 (S.D. Ohio 1998) ("a plaintiff must show that 'but for' the alleged interference the prospective relationship would have been consummated").

In light of the foregoing, Hedge is therefore also entitled to summary judgment on Contemporary's second claim.  Having reached this conclusion, the Court need not discuss the parties' alternate arguments.

### III.  Conclusion

For the foregoing reasons, the Court **GRANTS** the motion for summary judgment.  (Doc. # 34.)  The Clerk is instructed to enter judgment accordingly.

**IT IS SO ORDERED.**

    /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE